[Civ. No. 11688.   Second Appellate District; Division Two.—February 24, 1938.]

JOSEPH CHIARELLO, Appellant, v. J. C. AXELSON, Respondent.

J. C. Gillham and H. Elliott Pownall, Jr., for Appellant.

Leslie S. Bowden and Frank Mergenthaler for Respondent.

CRAIL, P. J.—The plaintiff was the owner of a trademark, to wit, "Lido", and the owner of a secret formula for the manufacture of medicated cream which he had been selling under the name "Lido Medicated Cream". The parties hereto entered into a written agreement which provided that the plaintiff transfer to the defendant the exclusive sales rights of "Lido Medicated Cream" and to the use of the trademark "Lido". Defendant agreed to purchase certain quantities of cream or pay to the plaintiff royalties amounting to $200 per month.

The contract also contained the following provision: "Nineteenth: This agreement shall not be assigned in whole or in part, either directly or indirectly, by either party, without the written consent of the other party hereto in each case first had and obtained, except that either party hereto may assign this agreement to a corporation to be formed by him, and in the event of such assignment the party so assigning shall be relieved and discharged of any further liability under this agreement except as to any liability which had accrued prior to the date of any such assignment to such corporation. No such assignment shall be made to any such corporation unless such corporation assumes and agrees to be bound by the terms and conditions of this agreement."

At the time of entering into said contract the defendant was worth in excess of $500,000.

Thereafter the defendant failed and refused to purchase the quantity of cream provided in the contract and failed to pay the minimum royalties. Thereupon the plaintiff sued the defendant in the municipal court and obtained judgment for the sum of $200 per month up to the date of the filing of the suit.

Thereafter the defendant formed and organized a corporation under the laws of California known as "Lido Products

Company'' and he assigned said contract to said corporation. The corporation passed a resolution by the terms of which it assumed and agreed to be bound by the terms and conditions of the said agreement. Defendant so notified the plaintiff. The defendant tendered to the plaintiff all sums due up to the date of the transfer and the company tendered to the plaintiff $200 for royalties due for the month of June, both of which the plaintiff refused. The defendant notified plaintiff that he had no further liability under the said agreement. Thereafter the plaintiff commenced this action against the defendant for the sum of $200 per month down to the date of the commencement of the action. The defendant answered that he had formed the corporation as provided in paragraph 19 of the agreement and that he had transferred the contract to said corporation and that the corporation had assumed all the liabilities and that he was relieved from any further liability. Upon the issue thus formed the court rendered judgment for the defendant. It is from this judgment the plaintiff appeals.

■ It is the first contention of the plaintiff that there cannot be a novation where a new debtor is substituted without the consent of the creditor to the substitution, and in the instant case it is shown that plaintiff refused to give his consent. He says, ''The only theory upon which the judgment of the lower court can be sustained, was that under the provisions of said paragraph 19 appellant herein accepted the said Lido Products Company, a corporation, in the place and stead of Axelson at the time he entered into the original contract of June 17, 1933; in other words, it must be contended that he consented to the substitution and novation nearly two years before any novation was attempted to be made and without knowledge of what such a corporation might be, or of what its assets might consist!'' This is literally what the plaintiff agreed to do in his contract. There is no merit in the contention that the corporation should be of equal financial standing as the defendant or that it should at least have assets amounting to $50,000. The plaintiff had already agreed that ''either party hereto may assign this agreement to a corporation to be formed by him, and in the event of such assignment the party so assigning shall be relieved and discharged of any further liability under this agreement''.

■ The plaintiff next contends that the corporation was insolvent and that the assignment to an insolvent corporation did not release the defendant. There is no finding that the corporation was insolvent, and taking the evidence in the light most favorable to the defendant, there is substantial evidence the corporation was not insolvent.

■ The plaintiff next contends that paragraph 19, above set forth, was ambiguous and uncertain and that therefore the court erred in excluding oral testimony to prove the true intention of the parties. There is no ambiguity in said paragraph.

■ Finally the plaintiff contends that the acceptance of the obligation by the corporation does not actually release the defendant from his obligations under the agreement for the reason that the corporation was the mere *alter ego* of the defendant. The answer is that under the terms of the agreement the corporation was "to be formed by him". "Bad faith in one form or another must be shown before the court may disregard the fiction of separate corporate existence." (*Hollywood Cleaning & Pressing Co.* v. *Hollywood Laundry Service, Inc.*, 217 Cal. 124, 129 [17 Pac. (2d) 709, 711].) The defendant cannot be charged with bad faith for doing the very thing agreed upon. In *Erkenbrecher* v. *Grant*, 187 Cal. 7, 11 [200 Pac. 641, 642], the court said, "Divested of the essentials which we have enumerated, the mere circumstance that all the capital stock of a corporation is owned or controlled by one or more persons, does not, and should not, destroy its separate existence; were it otherwise, few private corporations could preserve their distinct identity, which would mean the complete destruction of the primary object of their organization."

Judgment affirmed.

Wood, J., and McComb, J., concurred.